BRYCE   SMITH  v.  LUDWIG  W.  KIENE  et  al.,
Appellants.

Division One, November 30, 1910.

1. **NOTICE:**   Modification of Judgment:   Nunc Pro Tunc Order.
   Defendants upon whom proper summons has been served and
   who have filed motions for a new trial and in arrest of judgment,
   are, in contemplation of law, in court, at the time a judgment
   is set aside and a proper judgment, *nunc pro tunc*, at the same
   term, is rendered.

2. ———:  ———:  ———:   Appearance.   Even if defendants
   are entitled to notice before a judgment can be set aside and
   a *nunc pro tunc* judgment rendered, at the same term, they
   waive all objections for want of notice, by actually appearing,
   and filing a motion to set aside the *nunc pro tunc* judgment.

3. **JUDGMENT:**   Aided by Antecedent Entry.   In case of doubt
   as to the exact meaning of a judgment, an antecedent record
   may be considered in determining its effect.   Where a judgment
   was rendered and at a later date of the term set aside, and
   another judgment, *nunc pro tunc*, was entered, the former
   judgment set aside may be considered in determining the legal
   effect of the latter judgment.

4. ———:   In Tax Suit:   Not Rendered Against Defendants.
   A judgment for taxes paid by plaintiff in ejectment is not in-
   valid because it simply renders judgment for plaintiff for the
   amount of taxes paid by him, but does not mention the parties
   against whom plaintiff recovers, and does not say "against de-
   fendants."   If it names the plaintiff and defendants, is made a
   lien on the land, which it describes, and grants to plaintiff a
   special execution, it is sufficient, and (under the charter of
   Kansas City, and) usually the interest and estate of all persons

made parties will be conveyed by a proper sale under execution. In tax suits, the judgment is not a personal one against defendants, but one against the land, upon which it is proper to make it a lien.

5. ————: **Final Suit in Ejectment: Judgment for Taxes.** Plaintiff in the first count of his petition sued in ejectment, basing his right upon a tax deed, and in the second count asked that if said tax deed were held to be void, he might have judgment for the taxes paid by him to the sheriff and since the deed was executed. At a trial in 1902 the tax deed was adjudged void, and judgment rendered for defendants for costs, on the first count of the petition; and thereupon plaintiff was permitted to amend his petition, bringing in new parties and asking for judgment for the taxes paid, and the cause was continued, and in 1904 the court rendered judgment in plaintiff's favor for the amount of taxes paid by him. *Held*, that this last judgment was a final judgment. The second count of the original petition was premature, and did not state a good cause of action since plaintiff's right to recover thereon was dependent upon his failure to recover upon the first count; but the amended petition was in effect a new cause of action, and defendants appearing thereto, the judgment rendered thereon was not interlocutory, but final

6. ————: **Certificate of Purchase at Tax Sale.** The charter of Kansas City does not require the sheriff to issue a certificate of purchase to the purchaser at a tax sale. Even if it did it could not invalidate the execution under which the sale was made. It could at most only affect the sale.

7. ————: **Amending Petition After Publication to Non-Residents: Appearance.** Appearance by non-residents waives whatever error there may be in amending the petition after publication of the order of summons to them.

8. **SPECIAL TAX DEED: Clerical Error in Report as to Name.** Where after a sale upon special execution under a judgment for special taxes, a certificate of purchase was given to Bryce Smith and subsequently, on failure to redeem, a deed was executed to him, the fact that the sheriff, in his report of the sale, said Bryce Smith was the highest bidder, but the sale was made to B. Howard Smith, does not affect the validity of the deed to Bryce Smith. The recital in the report that the sale was made to B. Howard Smith was clearly a clerical error.

9. **RES ADJUDICATA: Defenses Raised in Another Proceeding: Ejectment.** Where defendants not only could have raised, but did raise, in a former suit all the questions presented as defenses in this ejectment suit, and those questions were there adjudicated by a court of competent jurisdiction, they are bound by the judgment therein.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback*, Judge.

AFFIRMED.

*E. W. Shannon* and *L. A. Laughlin* for appellants.

(1) The judgment of March 23, 1904, is void because entered without notice. Phelps v. Brumback, 107 Mo. App. 16; Parker v. Johnson, 22 Mo. App. 516; Jackson v. Fulton, 87 Mo. App. 228; Laun v. Ponath, 91 Mo. App. 271; Roberts v. Improvement Co., 126 Mo. 460; Jones v. Yore, 142 Mo. 38; Smith v. Kander, 85 Mo. App. 33; Ault v. Bradley, 191 Mo. 709. (2) The form of judgment is so vague as to make the judgment void. Moody v. Deutsch, 85 Mo. 237; Freeman on Judgments (4 Ed.), sec. 50a; 11 Ency. Pl. and Pr. 951; Aultman v. Wirth, 45 Ill. App. 614; Goldberg v. Markowitz, 94 App. Div. (N. Y.) 237; Ferrell v. Simmons, 63 W. Va. 45. (3) The judgment entered on March 23d is not a final judgment. Boothe v. Loy, 83 Mo. App. 601; Russell v. Railroad, 154 Mo. 428; Cramer v. Barmon, 193 Mo. 327; Crowe v. Peters, 63 Mo. 429; McHoney v. Insurance Co., 44 Mo. App. 425; Kabrick v. Insurance Co., 48 Mo. App. 393; Badgley v. St. Louis, 149 Mo. 122; Kansas City v. Mitchener, 85 Mo. App. 36. (4) The execution in No. 7666 is void because no certificate of purchase was issued. Davis v. Evans, 174 Mo. 307; Bryant v. Russell, 127 Mo. 422; Bradley v. Judd, 127 Mo. 434. (5) The judgment of March 23d was void because the petition was amended after publication of the order to non-resident defendants. Holland v. Adair, 55 Mo. 49; Janney v. Spedden, 38 Mo. 395; Roberts v. St. Louis M. L. I. Co., 26 Mo. 460; Railroad v. Atchison, 137 Mo. 218; Hinkle v. Lovelace, 204 Mo. 208, 226. (6) The sheriff's deed in case No. 33184 is void. Warren v. Manwarring, 173 Mo. 21.

*Dana, Cowherd & Ingraham* for respondent.

(1)   Appellants, having had the opportunity to raise in the original case, and having there raised, each and every point here urged, and having had the judgment of the court thereon, and having filed a motion to quash the execution, motion for new trial and motion in arrest of judgment, which were overruled, and appeal allowed to the Supreme Court, and the appeal not perfected, cannot have collaterally in this case another hearing of such matters.   Shelbina Hotel v. Parker, 58 Mo. 329; Kane v. McCoon, 55 Mo. 200; Yates v. Johnson, 87 Mo. 217; Beckner v. McLinn, 107 Mo. 288; State ex rel. v. Christy, 83 Mo. 374.   (2)   There is no merit in appellants' first point that judgment of March 23d is void because entered without notice.   The parties appeared and filed various motions against the judgment and appealed from it.   This not only waives the notice, like entry of appearance waives the issue and service of a summons, but also shows that they did actually have notice.   Loring v. Groomer, 110 Mo. 632. (3)   There is no merit in appellants' second proposition that the judgment is void because it is not a personal judgment against anybody.   McDonald v. Frost, 99 Mo. 48; Black v. Rogers, 75 Mo. 448; Moody v. Deutsch, 85 Mo. 244.   We were not entitled to a personal judgment in this case.   Siebert v. Allen, 61 Mo. 488; Kansas City v. Railroad, 77 Mo. 186; Granite Co. v. Bobb, 37 Mo. App. 486; City v. Miller, 66 Mo. 467. We now can test judgments by matter of substance rather than the measure of any particular draft or form.   Farley Bros. v. Cammann, 43 Mo. App. 174; Trumbo v. Flournoy, 77 Mo. App. 324; Lane v. Doud, 172 Mo. 176.   There can be no personal judgment in tax suits even where there is personal service.   A sale under a valid judgment in such cases transfers to the purchaser only the title and interest of the defendant to the suit.   Milner v. Shipley, 94 Mo. 106; Carr v. Coal Co., 96 Mo. 149.   (4)   There is no merit in appellants'

third proposition that the judgment of March 23d is not a final judgment, in that the suit was based on two counts, and this judgment is upon the second count only. The right to reimbursement or foreclosure of the lien given on the land does not commence to run until the title acquired by the tax deed fails, that is, until it is adjudged bad by a court of competent jurisdiction. Railroad v. Alexander, 49 Ark. 192; McClure v. Warner, 16 Neb. 447; Bryant v. Esterbrook, 16 Neb. 217; Otie Co. v. Brown, 16 Neb. 295; Shoenheit v. Nelson, 16 Neb. 235; Pitkin v. Reibel, 104 Mo. 513.

WOODSON, J.—This is an action of ejectment to recover the possession of a certain lot situate in Kansas City, and particularly described in the pleadings. There was judgment for plaintiff, and defendants appealed. The facts are few and are practically undisputed; and are substantially, as stated by counsel for appellants, as follows:

"This is an action of ejectment brought by Bryce Smith against Ludwig W. Kiene, his wife and daughter, Willie Kiene, to recover possession of a lot of ground in Kansas City, Missouri, having a frontage of twenty-seven feet on Eighteenth street, and extending back from the street to the depth of one hundred feet. The property is a part of lots 1 to 4, block 4, Evans' Addition, and lies between McGee and Oak streets, near the Belt line.

"The common source of title of the land, except the east one foot, is Wilhelmina Kiene. She was the first wife of Ludwig W. Kiene, one of the defendants. Wilhelmina Kiene acquired the title to the ground by warranty deed in 1879. She died in 1881 or 1882, and left surviving her, her husband, Ludwig W. Kiene, and Hugo L. Kiene, Dora C. Kiene, Willie Kiene, Bertha Merkel, now wife of Julius Merkel, Emma Dannell, now wife of Richard Dannell, and Edith Feinup, now wife of Fred Feinup, her children. Ludwig W. Kiene

married again after the death of his first wife, and with his second wife was living in a cottage on the ground at the time of the commencement of this action.

"On December 12, 1899, the Barber Asphalt Paving Company obtained a judgment in a suit in the Jackson Circuit Court (No. 33184) on a special taxbill for $236.60 against the east twenty-seven feet of the west fifty-seven feet of lot 1, being that part of the ground in controversy fronting on Eighteenth street and extending back from the street to the depth of twenty-five feet. A special execution was issued on this judgment on October 16, 1901, and on November 30, 1901, the land was sold by the sheriff. The sheriff's report of sale recites that Bryce Smith was the highest bidder, but the land was sold to B. Howard Smith. A certificate of purchase was given by the sheriff to Bryce Smith. The land not being redeemed from the sale on December 29, 1902, a sheriff's deed was given to Bryce Smith, conveying the east twenty-seven feet of the west fifty-seven feet of lot 1.

"All the property in question was sold for city taxes in 1897. Not being redeemed, a tax deed was given by the city treasurer on November 9, 1899, to L. M. Smith, daughter of B. Howard Smith, conveying the land for the taxes of 1897. She afterwards married George M. Hartmann, and in 1902, she brought a suit in ejectment in the Jackson Circuit Court (No. 7666) as L. M. Hartmann against Ludwig W. Kiene, his wife and Willie Kiene. The first count of the petition was in the usual form for ejectment, and the second count alleged that the title of the plaintiff was derived through a tax deed and that the plaintiff had paid out various sums of money for taxes, aggregating $289.56, and prayed that in the event that the tax deed was declared void said sum be declared a lien on the land.

"The case came on for trial on December 9, 1902, and the court held the tax deed void and instructed the jury to find for the defendants on the first count.

Leave was given plaintiff to file an amended petition making the heirs of Wilhelmina Kiene parties defendant, and the case was continued. On December 20, 1902, plaintiff filed a second amended petition, making the other children of Wilhelmina Kiene parties defendant. This amended petition in the first count sets out a cause of action in ejectment against Ludwig W. Kiene, his wife and daughter, Willie, and in the second count alleges that there has been a trial on the first count and the plaintiff defeated, for the reason that the tax deed is void on its face, and prays for a lien on the property for the taxes paid, aggregating $340.58.

"On February 21, 1903, an order of publication was obtained for Emma Dannell, Richard Dannell and Minnie Kiene. There was personal service on the other defendants. Proof of publication was filed April 18, 1903, and on March 5, 1904, the case was heard. Plaintiff was permitted to amend her petition by inserting the taxes paid for the year 1903, and a personal judgment was entered against the defendants for $889.99 on both counts of the petition. On March 23, 1904, without notice to the defendants, the court set aside the former judgment of March 5th, and entered a new judgment, *nunc pro tunc*. By this latter judgment, there was no finding on the first count of the petition. On the second count judgment was rendered in favor of the plaintiff for $889.99, and the same was made a lien on the property. On November 9, 1904, a special execution was issued on this judgment. The property was advertised and sold under this execution on December 23, 1905, to Bryce Smith. A deed was given by the sheriff to Bryce Smith on the day of the sale and on the following day this action of ejectment was begun."

There are some additional facts which will be noted in the opinion in connection with the discussion of the propositions to which they relate.

I. The first insistence of counsel for appellants is that the judgment of *nunc pro tunc* of March 23, 1905, is void, because it was rendered without notice to them.

This insistence is untenable for two reasons: First, the defendants there, appellants here, were, in contemplation of law, in court on that day by virtue of the original service had upon them and through the pendency of their undisposed motions for a new trial and in arrest of judgment. That being true, notice of the *nunc pro tunc* order was unnecessary.

Second, But conceding the defendants in the former suit were entitled to notice of the *nunc pro tunc* proceeding, however they, the appellants here, actually appeared in court there; filed a motion to set aside that judgment; also a motion to quash the execution issued on the same, and when it was overruled they excepted and appealed to this court.

Such appearance by the parties in interest waived all objections for want of notice. [State ex rel. v. Board, 108 Mo. 235; State ex rel. v. Harrison, 226 Mo. l. c. 171.]

II. The validity of the *nunc pro tunc* judgment of March 23, 1905, is also assailed by counsel, because it "is so vague as to make the judgment void," for the reason assigned that, "In the judgment of March 23d it is adjudged that said plaintiff have and recover the sum of $889.99, together with interest thereon, etc. No mention is made of the parties from whom the plaintiff recovers. A judgment must show of and for whom it is given."

In order to properly understand this proposition it will be necessary to set out the judgment in this connection. It reads as follows:

L. M. Hartman v. Ludwig Kiene, Mrs. Ludwig Kiene, Willie Kiene, Louis Hugo Kiene, Dora C. Kiene, Bertha Merkel, formerly Bertha Kiene, and Julius Merkel, her husband, and Julius Merkel, Emma Dannell, formerly Emma Kiene, and Richard Dannell, her husband, Edith Feinup, formerly Edith Kiene, and

Smith v. Kiene.

Fred Feinup, her husband, Minnie Kiene, Sam B. Hough, Emma Daenel, and Richard Daenel, Defendants, 7666.

This cause having heretofore been submitted to the court for trial, the plaintiff appearing by C. E. Burnham, her attorney, and the defendants, Mrs. Ludwig Kiene and Willie Kiene, appearing in their own proper person and tv E. W. Shannon, their attorney, and Ludwig Kiene and Hugo L. Kiene, appearing by E. W. Shannon, their attorney, and Bertha Merkel by W. H. Brown, her attorney, and each and every of the other defendants being duly and legally summoned to appear and having been three times called, come not, but made default, and the said cause was submitted to the court on the pleadings, evidence and arguments of the counsel and taken under advisement, and judgment rendered in said cause on March 5, 1904.

And it appearing to the court that the judgment entered of record in said cause in Record 301, at page 207, does not conform to the judgment of the court rendered in said cause; now, therefore, the said entry of judgment in said cause appearing in Record 301, at page 207, of this court, is hereby set aside and for naught held and the following judgment made and entered *nunc pro tunc* in said cause in conformity with the judgment of the court rendered therein, to-wit:

Plaintiff has leave to amend the second count of her amended petition, by interlineation, so as to include the taxes paid during the year 1903 on the property in controversy.

And the court finds for the plaintiff on the second count of her amended petition for the sum of $889.91.

It is therefore considered, adjudged and decreed by the court that under the second count of plaintiff's amended petition, said plaintiff have and recover the said sum of $889.99, together with interest thereon from the date hereof at the rate of twenty-four per cent annum, and costs of this case, and that this judgment shall be a special lien upon the real property in controversy under the second count, to-wit:

The east twenty-seven feet of the west fifty-seven feet of lots one, two, three, and the north fifteen feet of the east twenty-seven feet of the west fifty-seven feet of lot four, all in block four in Evans' Addition, situated in Kansas City, in Jackson county, Missouri, and that the same be levied and collected out of the said described real estate, and that plaintiff have hereof special execution.

Further ordered that all motions for new trial and in arrest of judgment heretofore filed by defendants are hereby refiled to this judgment.

In connection with the offer of the foregoing judgment, counsel for respondent offered the entry of judg-

ment in the same record at page 207, made in the same case of Hartman v. Kiene et al., of date March 5, 1904.

Said record entry is in words and figures as follows:

> Now on this day plaintiff has leave of court to amend petition by inserting the taxes for the year 1903 and judgment is rendered for the plaintiff and against the defendants on two counts for the sum of $889.99. It is therefore considered and adjudged by the court that the plaintiff recover from said defendants the sum of $889.99 with interest thereon from this date at the rate of six per cent per annum together with the costs of this cause and have therefor execution.

This contention is equally untenable, for the reason that this court in the case of McDonald v. Frost, 99 Mo. 48, said: "In event of doubt regarding the exact meaning of a judgment or decree, it is permissible to consider the antecedent record in determining its effect." Continuing the court said: "As that action was collateral to the present one, any mere error or irregularity in the former would not affect its validity."

In Moody v. Deutsch, 85 Mo. l. c. 244, the court said: "A judgment will be held sufficient when it appears to have been intended by some competent tribunal as the determination of the rights of the parties to the action, and shows in intelligible language the relief granted."

In Farley Bros. v. Camman, 43 Mo. App. l. c. 174, the court said: "But we now test judgments by matters of substance rather than by the measure of any particular draft or form."

In Pickering v. Templeton, 2 Mo. App. l. c. 430, quoting from Maxwell v. Stewart, 22 Wall. (U. S.) 79, the court said: "To make . . . a record valid upon its face, it is only necessary for it to appear that the court had jurisdiction of the subject-matter of the action and the parties, and that a judgment had in fact been rendered. All else is form only."

In Black v. Rogers, 75 Mo. 1. c. 448, the court said: "The judgment entered upon the compromise agreement, though neither formal nor full, was of like binding force on the parties thereto, when rendered, as any other judgment; and no appeal was taken therefrom, or motion or application of any sort made to set that judgment aside, though court remained in session . . . . But no such steps were taken, and in consequence thereof, all the matters then controverted must be regarded as *res adjudicata,* and therefore no longer open to re-agitation."

In State ex rel. v. Hunter, 98 Mo. 1. c. 390, the court said: "The judgment may not possess that symmetry of form and expression which precludes the possibility of challenge, but we think it sufficient to meet the substantial demands of the law."

If we test the validity of the judgment in question according to the foregoing adjudications, it would seem that there is no escape from the conclusion that while it is informal, it is nevertheless valid. The judgment upon its face shows who were the parties plaintiff, for whom and against what property the lien was adjudged. And if we consider this judgment in connection with the antecedent entries of the record in the case, as is authorized in the case of McDonald v. Frost, supra, then it would clearly appear that the judgment there related to the defendants, the appellants here.

Independent of the foregoing observations, the plaintiff in that suit was not entitled to a personal judgment against the defendants therein, for the reason that the suit was for the enforcement of a lien for city taxes against the lot in question, and the defendants were parties thereto only because they were supposed to have had some interest in the land; and the judgment rendered was against the land, to be discharged by the payment of so much money, and it showed upon its face against what property the special

execution should have issued. So under the pleadings and service had against the complaining defendants and law applicable thereto, no judgment could have been rendered against them authorizing the issuance of an execution against any other, and a personal judgment against them would have been erroneous.

In discussing this question the court, in the case of Seibert v. Allen, 61 Mo. l. c. 488, in speaking through Judge HOUGH, said: "It is not easy to determine, in the present state of the law, precisely what importance is to be attached to the ownership of the property charged, in a proceeding like this. No direct adjudication is required as to ownership, and if any were made it would most certainly be of no binding force upon those who were neither parties nor privies to the record; and yet a personal defendant seems to be necessary, though under the law no judgment can be rendered against him. As to the verdicts complained of, we have no hesitation in holding them to be sufficient to support the judgment."

And in the City of Kansas v. Railroad, 77 Mo. l. c. 186, Judge NORTON, in discussing the same question, said: "Besides this, the statute under which this suit is prosecuted authorizes parties having an interest in the property at the commencement of the suit to be made parties, and if defendant corporation had no interest in the property sought to be charged, it was not a proper party, and advantage should have been taken of it by answer. If any personal judgment was or could have been rendered against defendant corporation, it might be in a position to complain of any error committed, but as no such judgment was or could be rendered, we are at a loss to perceive how any error committed could affect the defendant if it had no interest in the property sought to be subjected to sale."

And Judge ROMBAUER, in Syenite Granite Co. v. Bobb, 37 Mo. App. l. c. 486, in speaking for the court, said: "In St. Louis v. Allen, 53 Mo. 50, the court de-

cided squarely that a personal judgment in this class of cases was unconstitutional and void, yet, upon the second appeal of the case, affirmed a judgment against the property alone, which was entered upon a general verdict, although there was no express statutory warrant for such proceeding. [Seibert v. Allen, 61 Mo. 482, 489.]''

The same doctrine was announced in the case of City of Louisiana v. Miller, 66 Mo. 467. And in Milner v. Shipley, 94 Mo. 106, and Carr v. Lewis Coal Co., 96 Mo. 149, it is held that a personal judgment in a tax suit could not be rendered against the owner of the property even when there was personal service; and that a sale under a valid judgment in such cases transfers to the purchaser only the title and interest of the defendant to the suit.

We have also held that the names of the parties to the judgment should appear in full, but where they do not it may be corrected on motion; and as the defect does not go to the substantial rights of the parties, the judgment should not for that reason be reversed. [Casler v. Chase, 160 Mo. 418.]

And Freeman on Judgments (4 Ed.), sec. 47, says that a judgment will be held sufficient ''if it appears to have been intended by some competent tribunal as the determination of the rights of the parties to an action, and shows in intelligible language the relief granted.''

Section 71 of the charter of Kansas City, then in force, provided that in suits for all real estate taxes it is only necessary to make parties defendant those who have an interest in the land at the commencement of the suit to enforce the lien; and it also provides that a sale under special execution issued on the judgment conveys all right, title and interest of all who are made parties to the action. And section 72 of the same charter, regarding the form of the judgment, provides: that the judgment, if for plaintiff, shall be that the plaintiff recover the amount found due and costs of suit, to be

levied of the real estate against which the tax is charged. There can be no question but what the judgment of March 23, 1905, conforms substantially to the provisions of those sections of the charter. That is all that the law requires, as has been so frequently announced by this court. Technical defects and immaterial irregularities are disregarded by the courts, as is shown by the numerous authorities previously quoted from.

Entertaining these views, we have no hesitancy in holding that the judgment in question was not invalid for the reasons assigned by counsel for appellants under this paragraph of the opinion.

III. The third contention made by counsel for appellants is that the judgment of March 23, 1904, is not a final judgment, and for that reason the sale under the special execution based thereon was absolutely void, and conveyed no title to respondent. This contention is predicated upon the fact that the petition in that cause contained two counts. The first was in ejectment, and the second was for the recovery of the taxes paid to the sheriff by the plaintiff in case the tax deed should be adjudged invalid. A trial was had on the first count December 9, 1902, which resulted in a verdict and judgment in favor of defendants therein, holding said deed to be void. Said judgment was as follows:

December 9, 1902: Now on this day again come the parties and the jury herein pursuant to the order of the court and the trial of this cause is proceeded with and after hearing the evidence introduced by the plaintiff, the jury under the instructions of the court returns to the court the following verdict, to-wit: "We, the jury, find the issues for defendants on the first count of plaintiff's petition. Geo. Rolles, foreman." It is therefore ordered and adjudged by the court that plaintiff take nothing by the first count of her petition and that defendant go hence discharged of the first count of plaintiff's petition without day, and plaintiff now files motion to be permitted to file an amended petition making the heirs of Wilhelmina Kiene, deceased, parties defendant, and said motion is taken up, fully heard and considered and is by the court sustained, and defend-

ants except to the ruling of the court, and the court now discharges the jury from any further consideration of this cause and continues the cause until the next regular term of this court at plaintiff's costs. It is therefore ordered and adjudged by the court that plaintiff pay all costs herein incurred at this October term, 1902, of this court and that execution issue therefor.

To further develop appellants' position, it should be stated that they contend that the judgment of March 5, 1904, was on both counts of the petition, but that the judgment of March 23d, the one under which the sale was had, was upon the second count only.

In support of this contention counsel cite section 593, Revised Statutes 1899. This section of the statute relates to the same subject-matter and should be read and considered with sections 694 and 773. The latter two came before Division No. 2 of this court for consideration in the case of Stone v. Perkins, 217 Mo. 586. In construing those sections, Judge GANTT, in speaking for the court, on page 606, said: "A question of practice has suggested itself to us by the forms of the judgments entered on the two counts on different days, but upon consideration we have reached the conclusion that the two entries may be and should be treated as one final judgment, as our statute, sections 694 and 773, Revised Statutes 1899, clearly indicates should be done before the entry of the final judgment in a cause. Under our code the circuit court can administer both legal and equitable rights and remedies when necessary in the same civil action, and the trial court is armed with discretionary power to direct separate trials where the nature of the issues on the pleadings require them. So that it would have been better for the court to have simply made its findings on the first count and deferred entering its final judgment until it had also tried the second count and then entered one final judgment as the statute evidently contemplated."

In the case at bar we are precluded from treating the judgment on the first and second counts as one final judgment, as was done in the case last cited, for the reason that the former was rendered December 9, 1902, while the latter was rendered March 23, 1904, not on the succeeding day nor during the same term of court as was done in that case; but at different terms and years apart. So, if that was all there was to this case, we might be compelled under said sections of the statute to hold that there was no final judgment in the case, but simply an interlocutory judgment upon each count, or perhaps, more correctly speaking, an erroneous final judgment upon each. But without stopping to decide that question, it should be borne in mind that under the charter of Kansas City, section 39, article 5, the plaintiff at the time she brought that suit had no such cause of action as was stated in the second count of the petition—that is, a right to sue for and recover back the taxes, with interest and costs paid by her to the sheriff, as the purchase price of the lot. The judgment in favor of the defendants on the first count adjudged the tax deed bad, and that fact gave rise to plaintiff's right to sue for and recover back the taxes, interest and costs so paid by her to the sheriff. Clearly the suit on the cause of action stated in the second count of the petition was prematurely brought, for, as before stated, it had no existence until the rendition of the judgment on the first count, all of which facts appeared upon the face of the petition. That being true, there was in law and fact but one cause of action stated in the petition, and that was stated in the first count. Consequently, said sections of the statute had no application, and when the court entered judgment thereon it was, therefore, a final judgment within the meaning of the Practice Act.

Counsel for plaintiff in that cause evidently realized that the second count did not state a good cause of action, for upon the rendition of the judgment on the

first count, they prayed, and the court permitted them, to amend the petition as to the second count, and continued the cause. This was in effect a new suit, and, strictly speaking, the defendants were entitled to service of process; but that right was subsequently waived, as held in a previous paragraph, by their appearance and contesting each and every step in the trial of the cause. [State ex rel. v. Muench, 230 Mo. 236.]

That being true, then it must be held that the judgment of March 23, 1904, was a final and not an interlocutory judgment, as contended for by counsel for appellants, consequently it was sufficient to sustain the sale made under the special execution. We, therefore, rule against appellants as to this contention.

IV. The fourth contention of counsel for appellants is that the execution in the tax suit was void because no certificate of purchase was issued.

I am unable to see in what possible way the failure of the sheriff to give to the purchaser a certificate of purchase, even though the law required it, could invalidate the execution under which the sale was had. At most it could only affect the sale and not the execution. But there is no merit in the last suggestion, for the charter does not require the sheriff to give a certificate of purchase where he sells land on execution based on a judgment enforcing liens for such assessments. Section 59 of article 5 of the charter, 1889, expressly provides that the lien shall be enforced "as in other cases of judgments and decrees of such court." There is no provision for redemption in such cases and none here after sale.

Counsel for appellants rely upon section 18 of article 9 of the charter. Clearly, it has no application to this case. By express terms that section refers to sales made for special assessments.

Section 72, heretofore considered in reference to the form of the judgment, not only provides for the form of the execution and sale thereunder, but, also, expressly says, "And the sale under such judgment and execution shall be absolute and free from redemption."

This insistence is, therefore, also without merit.

V. Counsel for appellants also assail the validity of the judgment of March 23, 1905, for the reason that the petition was amended after the publication of the order to the non-resident defendants.

Whatever merit there might have been in this contention was waived by the actual appearance of all the defendants, residents and non-residents, in court, and participating in the various steps taken in the trial of that cause.

VI. Nor is there any merit in appellants' last contention, namely, that the tax deed was void because the sheriff's report of sale recites that Bryce Smith was the best and highest bidder, but that the lot was sold to B. Howard Smith; that a certificate of purchase was given to Bryce; and that the land not having been redeemed, as provided by law, the sheriff, on December 29, 1902, executed and delivered a deed to said Bryce Smith.

It is manifest from counsel's own showing that the recital of the sheriff's report of sale, that the lot was sold to B. Howard Smith, was a clerical error, and should be disregarded. Bryce Smith was the highest bidder, and the lot was sold and conveyed to him by the sheriff.

In addition, respondent's title is good independent of the deed made to B. Howard Smith based upon the judgment and execution in the case of Barber Asphalt Paving Co. v. Kiene et al. The last deed covers only a part of the property which was covered in full by the

sheriff's deed, hereinbefore mentioned, and which was based upon the Hartmann-Kiene judgment.

VII. Counsel for respondent contends that even though it should be conceded that each and every one of appellants' contentions were well taken, yet they can avail them nothing in this suit, for the reason that they had the opportunity to raise, and did raise, in the original case, each and every point here presented; and having had the judgment of the court thereon, and having filed motions for a new trial and in arrest of judgment, and motion to quash the execution issued thereon, which were overruled, and appeal taken and allowed to this court, but not perfected, cannot here in a collateral proceeding have another hearing of the same matters.

As previously held, the court, in the original suit, had jurisdiction of both the persons of the appellants here and the subject-matter of the suit. Appellants not only could have raised in that case all of the questions here presented, but the record discloses the facts that they were in fact made and were adjudicated in that case. Under the decisions of this court there can be no question but what this cause is barred by the adjudication had in the original case.

In Shelbina Hotel Association v. Parker, 58 Mo. l. c. 329, Judge SHERWOOD said: "After the numerous adjudications on this point, it ought to be regarded as settled, that where a party to an action, being fully apprised of his rights, suffers judgment to go against him, when he might, by the exercise of reasonable diligence in making his defense, prevent a recovery of the amount claimed, either in whole or in part, he should not be allowed in a subsequent proceeding to re-agitate questions, which either were, or else would have been, adjudicated at the former trial, but for his inexcusable neglect. . . . Again . . . a fault equally fatal to plaintiff's case is met in the undenied state-

ments of defendant's answer . . . showing that the motion of the plaintiff to modify the award with regard to the mistake on which the present suit is based, and the motion of defendant to confirm the award, being heard together, the former motion was overruled, and the latter sustained, and a judgment of confirmation entered accordingly; and that the same was in full force. It thus stands admitted of record that the very point in controversy, and between the same parties, had received adjudication in a former action, the validity of the judgment then rendered remaining unquestioned.''

In Yates v. Johnson, 87 Mo. l. c. 217, the court in speaking through BLACK, J., said: ''It is enough to say that the court had jurisdiction of . . . the entire subject-matter. The judgment did determine the plaintiff's rights, . . . and the order of sale was so framed as to give the purchaser a title. . . . No objections by answer, or otherwise, were made to that disposition of the mortgage. The mortgagee could have appealed or prosecuted a writ of error after the final order of distribution, if not satisfied with the disposition of the cause. This has not been done. The judgment cannot be questioned in this collateral proceeding.'' [Rosenheim v. Hartsock, 90 Mo. 357; Martin v. McLean, 49 Mo. 361; McClellan v. Railroads, 103 Mo. l. c. 310; Holt County v. Cannon, 114 Mo. 514; Hope v. Blair, 105 Mo. 85.]

''If after the rendition of a judgment by a court of competent jurisdiction, and after the period has elapsed when it becomes irreversible for error, another court may in another suit inquire into irregularities or errors in such judgment, there would be no end to litigation and no fixed established rights.''

In Beckner v. McLinn, 107 Mo. l. c. 288, Judge GANTT, for the court, said: ''Moreover, the defendant, Mary A. Byers, before any final judgment of partition had been rendered in the cause, and while the decree

was as yet only interlocutory, appeared by her counsel in the partition suit. . . . Her claim was not that the court had no jurisdiction over her, or the subject-matter of the suit. . . . She was accorded a hearing on the merits, and that issue decided against her. The decision was made by a court having jurisdiction both of the person and subject-matter. From that judgment she took no appeal or other proceeding to reverse it. It is binding upon her and all others who were parties to that proceeding." [Holladay v. Langford, 87 Mo. 577; Bobb v. Graham, 89 Mo. 200; Hart v. Steedman, 98 Mo. 452.]

In Kane v. McCown, 55 Mo. l. c. 200, Judge NAPTON, in speaking for the court, said: "When the record shows a finding of the court, that there has been a legal order of publication, and a publication made in pursuance of such order, it is not apparent how this finding . . . can be attacked collaterally any more than any other conclusion of the court in the course of its proceeding to final judgment. The opinion on the sufficiency of the order of publication may be entirely wrong, reversible on review, but the error does not vitiate the title acquired under the judgment. In the language of Mr. Justice MILLER in Cooper v. Reynolds, 10 Wall. 321, to hold such judgments, sales and deeds void would be 'to overturn the uniform course of decision in this court, to unsettle titles to vast amounts of property, long held in reliance on those decisions, and . . . to sacrifice sound principle to barren technicalities.' "

We are, therefore, of the opinion, that the judgment should be affirmed; and it is so ordered. All concur.